```
 1  ROBERT D. WILSON (SBN: 136736)
    Deputy Secretary and Chief Counsel
 2  California Department of Veterans Affairs
    1227 "O" Street, Room 306
 3  Sacramento, California 95814
    Telephone: (916) 653-2539
 4  Facsimile: (916) 653-2454

 5  Attorneys for California Department of Veterans Affairs
```

**FILED**

**OCT - 4 2010**

U.S. BANKRUPTCY COURT
SANTA ROSA, CA

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of<br><br>CHARLES DENIS DOWNIE and<br>LYDIA DOWNIE,<br><br>Debtors. | Case No.: 10-11995<br>Chapter 13<br><br>OPPOSITION OF CALIFORNIA DEPARTMENT OF VETERANS AFFAIRS TO MOTION FOR ORDER DETERMINING VALUE OF SECURED CLAIM AND FOR ORDER AVOIDING LIEN; DECLARATION OF BILL NOLAN IN SUPPORT THEREOF<br><br>Date: October 18, 2010<br>Time: 1:30 p.m.<br>Place: 99 E Street, Santa Rosa, CA<br><br>Judge: Honorable Alan Jaroslovsky |

The California Department of Veterans Affairs (CDVA) hereby opposes Debtors' Motion for an Order Determining the Value of our Secured Claim and for an Order Avoiding a Lien.

**SUMMARY OF OPPOSITION**

After Charles Denis Downie and Lydia Downie (Debtors) obtained a Cal-Vet loan to purchase the real property located at 10133 Fairway Drive, Kelseyville, California ("Subject Property"), they obtained a loan from American General Financial Services (American General) and then an Improvement Advance from the CDVA. Based on prior hearings in this case, and the present motion, the CDVA understands the issue in this case to be which of the two subsequent loans has priority, American General's or the CDVA's and, therefore, which of the two may be subject to discharge.

1

OPPOSITION OF CALIFORNIA DEPARTMENT OF VETERANS AFFAIRS TO MOTION FOR ORDER
DETERMINING VALUE OF SECURED CLAIM AND FOR ORDER AVOIDING LIEN; DECLARATION OF BILL
NOLAN IN SUPPORT THEREOF; Case No.: 10-11995

Case: 10-11995   Doc# 29   Filed: 10/04/10   Entered: 10/07/10 11:21:26   Page 1 of 17

Ordinarily, the CDVA views a Cal-Vet purchase loan and a Cal-Vet Improvement Advance as overlapping agreements but a different situation arises when, as here, an encumbrance exists before the Improvement Advance is made. Under this circumstance, the CDVA's Improvement Advance is subordinate to the prior encumbrance unless the Debtors obtain a subordination agreement from their third-party lender before the Improvement Advance is made. Because Debtors obtained their American General loan before they obtained the CDVA Improvement Advance, and the CDVA did not request that the Debtors obtain a subordination agreement from American General, the CDVA's Improvement Advance is subordinate to American General's loan.

But that fact, in and of itself, does not end the inquiry. If the value of the Subject Property is sufficient to secure the principal loan, American General's loan and one dollar of the Improvement Advance, then the CDVA's Improvement Advance cannot be stripped because it then is an undersecured lender – not an unsecured lender. The 2010-2011 Lake County Property Tax Bill values the Subject Property at $231,865 which is sufficient to secure American General's loan as well as the CDVA's Improvement Advance. The Debtor's motions must therefore be denied.

## STATEMENT OF FACTS

On February 13, 2004, Charles Denis Downie entered into a Cal-Vet loan contract for the purpose of purchasing the Subject Property. *See*, Cal-Vet Loan Contract (Improvement Advance), attached as Exhibit 1 to the declaration of Bill Nolan (Nolan, Decl.) On February 27, 2004, Debtors assigned themselves a joint tenant interest in the Subject Property. Ex. 1, p. 4. The approximate amount still owing on the original Cal-Vet contract is $176,767.29. Nolan Decl., ¶ 3.

On July 7, 2006, the Debtors obtained a loan from American General. Debtors report the balance due on that loan is $44,786.63.

On October 15, 2007, the CDVA granted Debtors an Improvement Advance in the amount of $75,000. Nolan Decl., Exhibit 2. The CDVA did not ask the Debtors to obtain a subordination agreement from American General before granting the Improvement Advance. Nolan Decl., ¶ 4. The approximate amount still owing on the Improvement Advance is $73,457.58. Nolan Decl., ¶ 4. The 2010-2011 Lake County Property Tax Bill values the Subject Property at $231,865. Nolan Decl., ¶ 5.

2

OPPOSITION OF CALIFORNIA DEPARTMENT OF VETERANS AFFAIRS TO MOTION FOR ORDER
DETERMINING VALUE OF SECURED CLAIM AND FOR ORDER AVOIDING LIEN; DECLARATION OF BILL
NOLAN IN SUPPORT THEREOF; Case No.: 10-11995

Case: 10-11995    Doc# 29    Filed: 10/04/10    Entered: 10/07/10 11:21:26    Page 2 of 17

# ARGUMENT

## I.

## THE IMPROVEMENT ADVANCE MAY NOT BE STRIPPED.

A second deed of trust may be stripped in Chapter 13 proceedings only if the second is wholly "unsecured" as that term is defined by sections 1322(b) and 506. In this context, the term "unsecured" means that the second stands completely separate and apart from the purchase loan and has no value whatsoever because the value of the property is less than that original purchase loan.

In *Nobleman v. American Savings Bank* 508 U.S. 324, 329-330 (1993), the Supreme Court held that section 1322 (b)(2) bars a chapter 13 plan from modifying the rights of holders of claims, secured only by the debtor's principal residence including an undervalued claim. In reaching this holding, the Supreme Court analyzed the language of section 1322, and found it focused on the rights of holders of secured claims rather than on the value of the claim. Justice Thomas, writing for a unanimous court, noted that the bank was the holder of a secured claim because "petitioners' home retains $23,500 of value as collateral. The portion of the bank's claim that exceeds $23,500 is an 'unsecured claim componen[t]' under § 506(a), however, that determination does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." *Nobleman v. American Savings Bank,* (1993) 508 U.S. 324, 329-330.

In this case, the Debtors contend that the value of the property is less than the original loan amount but the Debtors have failed to provide any proof of the value of the Subject Property. The Debtor's statement of value is on information and belief only. The Debtors provided no actual evidence of sales, they did not prove that the other properties were in fact comparable or in the same area, and they did not fix the point in time when the sales comparisons were made. Because in the ordinary course of business, the CDVA pays the property taxes on its properties, it has obtained the 2010-2011 Lake County Property Tax Bill on the Subject Property. Lake County values the Subject Property at $231,865. Nolan Decl., ¶ 5.

The approximate amount still owing on the original Cal-Vet contract is $176,767.29. Nolan Decl., ¶ 3. Debtors report that the balance due on the American General loan is $44,786.63. The total of these two loans equals $221,553.92. The value of the property as assessed by Lake County is

OPPOSITION OF CALIFORNIA DEPARTMENT OF VETERANS AFFAIRS TO MOTION FOR ORDER DETERMINING VALUE OF SECURED CLAIM AND FOR ORDER AVOIDING LIEN; DECLARATION OF BILL NOLAN IN SUPPORT THEREOF; Case No.: 10-11995

Case: 10-11995    Doc# 29    Filed: 10/04/10    Entered: 10/07/10 11:21:26    Page 3 of 17

therefore more than adequate to secure American General's loan as well as the CDVA's Improvement Advance. The Debtor's motions to strip the CDVA Improvement Advance must be denied.

## CONCLUSION

For the foregoing reasons, the California Department of Veterans Affairs respectfully requests that the Court deny Debtors' Motions to determine the value of the CDVA's secured claim and to avoid the Improvement Advance.

Dated: October 4, 2010

Respectfully submitted,

ROBERT D. WILSON
Deputy Secretary and Chief Counsel
CALIFORNIA DEPARTMENT OF VETERANS AFFAIRS

By *[signature]*
ROBERT D. WILSON
Attorneys for California Department of Veterans Affairs

4

OPPOSITION OF CALIFORNIA DEPARTMENT OF VETERANS AFFAIRS TO MOTION FOR ORDER DETERMINING VALUE OF SECURED CLAIM AND FOR ORDER AVOIDING LIEN; DECLARATION OF BILL NOLAN IN SUPPORT THEREOF; Case No.: 10-11995

Case: 10-11995   Doc# 29   Filed: 10/04/10   Entered: 10/07/10 11:21:26   Page 4 of 17

**DECLARATION OF BILL NOLAN IN SUPPORT OF THE CDVA'S OPPOSITION TO DEBTORS' MOTION FOR AN ORDER DETERMINING THE VALUE OF CDVA's SECURED CLAIM AND FOR AN ORDER AVOIDING A LIEN**

I, BILL NOLAN, hereby declare as follows:

1. I am employed as a Senior Property Agent at the Farm and Home Division of the California Department of Veterans Affairs, opposing party herein.

2. I have reviewed the Department's file in this matter and I am familiar with the facts and issues of this case. My Declaration is based upon my review of the documents on file in this matter, and if called upon to testify herein, I competently could and would testify thereto.

3. Attached here to as Exhibit 1 is a true and correct copy of the Cal-Vet loan contract for the purchase of the subject real property located at 10133 Fairway Drive, Kelseyville, California. The approximate amount still owing on the original Cal-Vet contract is $176,767.29.

4. Attached hereto as Exhibit 2 is a true and correct copy of the Cal-Vet loan contract for the Improvement Advance that is the subject of the Motion to Value Collateral. The CDVA did not ask the Debtors to obtain a subordination agreement from American General before granting the Improvement Advance. The approximate amount still owing on the Improvement Advance is $73,457.58.

5. It is the usual business practice for the CDVA to pay the property taxes on the properties it owns. Attached hereto as Exhibit 3 is a true and correct copy of the 2010-2011 Lake County Property Tax Bill for the Subject Property. Lake County values the Subject Property at $231,865.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct this 4th day of October 2010, at Sacramento, California.

_____
BILL NOLAN, Declarant

5

OPPOSITION OF CALIFORNIA DEPARTMENT OF VETERANS AFFAIRS TO MOTION FOR ORDER DETERMINING VALUE OF SECURED CLAIM AND FOR ORDER AVOIDING LIEN; DECLARATION OF BILL NOLAN IN SUPPORT THEREOF; Case No.: 10-11995

Case: 10-11995   Doc# 29   Filed: 10/04/10   Entered: 10/07/10 11:21:26   Page 5 of 17

# EXHIBIT 1

CHARLES DENIS DOWNIE
10133 FAIRWAY DRIVE
KELSEYVILLE, CA 95451

## CAL-VET LOAN CONTRACT

THIS CONTRACT is made and entered into this __13th__ day of __February__, __2004__, by and between the DEPARTMENT OF VETERANS AFFAIRS OF THE STATE OF CALIFORNIA, hereinafter called Department, and **CHARLES DENIS DOWNIE** hereinafter called Purchaser. The terms "Department of Veterans Affairs" or the "Department" shall mean the Department of Veterans Affairs of the State of California unless preceded by "United States", in which case the terms shall refer to the United States Department of Veterans Affairs.

1. Department hereby agrees to sell to Purchaser, and Purchaser hereby agrees to purchase from Department, at the price and on the terms and conditions set forth herein, that certain real property, together with the dwelling and other improvements thereon, situated in the County of __Lake__, State of California, and more particularly described as follows:

SEE EXHIBIT A ATTACHED

Said sale and purchase, and this Contract, are expressly made subject to the provisions of Division 4 of the California Military and Veterans Code, and Title 12, California Administrative Code, and any and all acts and rules amendatory thereof or supplemental thereto; to any and all unpaid taxes, assessments, or similar charges; and to any and all rights of way, easements, covenants, conditions, restrictions, and reservations of record.

**"ASSUMPTION WARNING: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT. SEE PARAGRAPH 20 BELOW."**

2. The selling price for said property shall be the sums of
ONE HUNDRED SIXTY THOUSAND EIGHTY NINE AND 86/100 DOLLARS ($ 160,089.86)
together with all expenses incurred and estimated to be incurred by Department as provided in Section 986.9 or 987.69 of the Military and Veterans Code, and all sums assessed or charged by Department pursuant to this Contract, payable in lawful money of the United States at the offices of Department in Sacramento, California. Said selling price, together with interest thereon at the amortized rate of __4.25__% and with a permanent contract rate not to exceed __4.75__% per annum, or on so much thereof as shall from time to time remain unpaid, at the rate or rates prescribed in accordance with Sections 987.17, 987.17a, or 987.87 of the Military and Veterans Code, shall be paid in monthly installments if said property is a home, or in monthly or annual installments as determined by Department if said property is a farm. Said installments shall be in the initial sum of $ __1,020.12__ each, and if monthly shall begin on the first day of the next month following thirty (30) days from the date loan funds are issued and shall continue on the first day of each and every month thereafter, or if annual shall begin on January 1, of the year following the date of this Contract and shall continue on January 1, of each and every year thereafter, until the whole shall have been paid. A late charge not in excess of four percent (4%) of the principal and interest portion of the installment due shall be imposed for each and every payment received after the 15th of any month, and Purchaser hereby agrees to pay such charge or charges as billed. The actual amount of such charge shall be determined by Department from time to time on the basis of its costs and revenue losses in handling and processing such late payment.

3. Purchaser may pay any amount in excess of said installment at any installment date, but such excess payments shall not relieve Purchaser of his obligation to pay future installments on each of the succeeding installment dates.

4. Purchaser shall also pay such sums as may be charged to purchaser for taxes; premiums on life, disability, and fire and hazard insurance; disaster indemnity assessments; repayment of additional loans or advances; increases in interest rates; title expenses; cancellation and reinstatement charges; returned check charges; delinquent account charges; legal fees and costs; and such other and similar sums as Department may assess from time to time.

5. Purchaser hereby represents and warrants that he is a veteran, and agrees that he or members of his immediate family will actually reside on the property within sixty (60) days of the date of this Contract and that he will continue to so reside on the property and maintain it as his principal place of residence during the term of this Contract, all as defined and prescribed in the Military and Veterans Code.

6. Purchaser agrees, during the term of this Contract, or any extension or renewal thereof, to pay, satisfy and discharge all taxes, charges, or assessments, and all other charges or encumbrances which shall be a lien upon the property hereinbefore described, or any part thereof; and also all taxes, charges, or assessments levied or assessed upon the interest hereby created by this Contract, if any, which may be taxed, charged, assessed, levied or imposed upon said property, or upon any improvements thereon, or upon the interest created, or upon the interest hereunder of any of the parties hereto; all such taxes, charges, assessments and other charges or encumbrances to be paid before the same become delinquent.

7. Purchaser agrees that he will not suffer or perm[it an]y lien to attach to said property or to the interest o[f eithe]r of the parties therein; that whenever he constructs, reconstructs, or alters any building, improvement, w[e]ll or structure on said premises, he will withhold fro[m hi]s contractor sufficient money to answer any claim or lien that may be filed therefore; that during the term of this Contract, or any extension or renewal thereof, he will commit no waste upon said premises and will devote said premises to no other purpose than that of a farm or home without the written consent of Department first had and obtained; and that he will keep in good order and repair all buildings, fences, and other improvements now situated on said property or that may be placed thereon during the term of this Contract, or any extension or renewal thereof. Any alteration or additions to buildings erected shall be in accordance with plans and specifications first submitted to and approved in writing by Department.

8. Out of any money available in the Veteran's Farm and Home Building Fund, Department may advance to Purchaser, under such policies as Department may from time to time prescribe, sums for the purpose of paying taxes and assessments, or making improvements, or keeping in good order or repair all buildings, fences or other improvements on the property, or Department may advance to Purchaser moneys actually expended in so doing. All moneys so advanced to Purchaser by Department may be added to the unpaid balance hereunder and shall be repaid by Purchaser to Department under such conditions as Department may prescribe.

9. Purchaser agrees to insure and keep insured against fire and other hazards all buildings on said property. All policies shall be written with any loss payable to Department and to Purchaser, as their interest may appear, and shall be in such amount or amounts, with such insurance companies, and under such terms and conditions as may be specified by Department. Department will require and fix an initial minimum amount of insurance as necessary to maintain and protect its interests under this Contract. Purchaser shall be solely responsible for requesting in writing and maintaining such additional amounts of insurance as may be necessary to protect his interest in the property, and shall bear the risk of any loss in excess of the amount of insurance in force at the time of such loss. All such policies and renewals thereof shall be deposited with Department, and in case of insured damaged by fire or other hazard, the proceeds of any and all such policies shall be applied to the unpaid balance hereunder or shall be used to reconstruct the damaged property, all as Department may determine.

10. If the property being purchased under this Contract is a farm, as defined by the Military and Veterans Code, Purchaser agrees to cultivate the land and harvest the crop or crops thereon in accordance with good farming practices and in such manner as Department may approve or require. If illness, accident, or other sufficient reason prevents Purchaser from cultivating the land or harvesting, the crop or crops growing thereon, Department may cultivate the land, or cause it to be cultivated, or harvested, or cause to be harvested, the crop or crops growing, thereon, in which event Department may sell such crop or crops so harvested. Out of the proceeds of such sale or sales, Department may reimburse itself for any expenses which it may have incurred in the cultivation of the land, the harvesting of the crops and the sale thereof, and retain any moneys due to Department from Purchaser, and the balance, if any shall be paid by Department to Purchaser.

11. If the Purchaser fails or neglects to pay, satisfy and discharge at maturity all taxes, charges, or assessments, and all other charges or encumbrances which may be a lien upon the property or any part thereof, and also all taxes, charges, or assessments levied or assessed upon the interest created by this Contract; or to keep the buildings, fences, and other improvements and crops upon the property insured; or to keep in good order and repair all buildings, fences and other improvements situated upon the property; then, and in any of such events, it shall be lawful for Department to pay, satisfy or discharge, or settle, or compromise said taxes, assessments, charges or encumbrances, or to insure said buildings, fences, improvements or crops, or any of them, or to do or cause to be done the work and supply the materials necessary to keep the buildings, fences, and other improvements situated upon such property in good order and repair. All moneys so expended by Department shall be added to the selling price of the property and shall bear interest as provided by the Military and Veterans Code, and shall be repaid by Purchaser to Department on demand; provided, however, that Department may amortize the repayment of such expenditures or permit repayment in installments upon such terms and conditions as it deems proper; provided, further, that Department shall be the sole judge of the legality or validity of such taxes, assessments, charges or encumbrances, and the amount necessary to be paid in satisfaction or discharge thereof, and of the amount of insurance to be placed upon the buildings, fences, or other improvements and crops upon the property and of the amount necessary to be paid for the premiums for such insurance, and of the necessity and nature of the work necessary to keep the buildings, fences, and improvements upon the property in good order and repair and of the amount necessary to be paid therefore.

12. Purchaser agrees that any award or settlement of damages in excess of $100.00 made in connection with the condemnation for public use of or injury to the property or any part thereof, including severance damages, less such reasonable attorney fees and costs as Purchaser may incur in defending or contesting such condemnation, shall be paid to Department; and upon such payment Department shall credit Purchaser's account under this Contract with the amount thereof. For purposes of this paragraph, Department shall be the sole judge of the reasonableness of said attorney fees and costs and of the amount to be allowed therefore.

13. Purchaser agrees to notify Department promptly of the making of any marital or property settlement agreement, or of the entry of any interlocutory judgment of dissolution of marriage or legal separation, in which the property being sold under this Contract, or any portion thereof, is distributed or awarded to Purchaser's spouse, or any other person or persons. It is expressly understood and agreed that Department will give its consent, if at all, to such transfer only if the property is distributed or awarded to Purchaser's spouse, in such event, the spouse, if a non-veteran and if required, shall pay the higher interest rate prescribed by Department for non-veteran assignees from the date of such transfer and shall comply with all terms and conditions of the Contract.

14. If the dwelling on said property is a mobilehome as defined in the Military and Veterans Code, it shall be permanently affixed on a proper foundation system on the real property described herein, shall be part and parcel of said property for purposes of this Contract the same as if it were a constructed dwelling thereon, and shall not be removed from said real property without the prior written consent of Department, except where temporary removal is necessary to avoid potential damage. Notwithstanding this provision, however, Department shall be shown as legal owner on any certificates of ownership or other evidence of title, and shall retain possession of such certificates or evidences of title until this Contract is paid in full. Purchaser shall be responsible for payment of any and all fees for registration and licenses, and for any and all renewals thereof, and shall comply fully with all applicable provisions of the Health and Safety Code and the Vehicle Code, the rules and regulations of the Department of Housing and Community Development, the Department of Motor Vehicles, and other appropriate authorities, and any and all applicable zoning or similar ordinances.

15. In the event of a failure of Purchaser to comply with any of the terms or conditions of this Contract, Department shall have the right at its option to cancel this Contract, and thereupon shall be released from any and all obligations, at law or in equity, to Purchaser under this Contract, and Purchaser shall forfeit all rights hereunder and all payments theretofore made shall be deemed to be rental paid for occupancy. Upon such forfeiture, Department shall take possession of the property covered by this Contract, and shall remove all persons and personal property there from without any liability whatsoever on the part of Department or of any official or employee thereof for any damage or injury caused by or incident to said entry or removal, or for such property. The failure of Department to exercise any option to cancel or other privilege or remedy under this Contract for any default shall not be deemed a waiver of the right to exercise the option to cancel or other privilege or remedy under this contract for that any other default on the part of Purchaser. Time is expressly made of the essence of this Contract.

16. Before exercising the right to cancel this Co___t, Department will fix a day upon which it will ca___ the same and give written notice to Purchaser of its intention to do so, and such notice shall be deem___ ly given when mailed in any United States Post O.___ by certified mail, postage prepaid, and addressed to Purchaser at the address of the property under this Contract or such change of address as Purchaser may hav___ led with Department. Said notice shall be so mailed at least thirty days before the day fixed for cancellation, and Purchaser shall have the right on any day before the day fixed to comply with and perform the terms of this Contract for which he may be in default, including the full payment of the amount, if any, in arrears, with interest and other charges thereon, and after such compliance or payment this contract shall not be canceled because of such default. If full compliance, performance or payment is not so had or made within said time, Department may declare Purchaser in default, and cancel this Contract and enforce its right of forfeiture hereunder. Upon such declaration of default, cancellation, and forfeiture being made by Department, all rights and interests hereby created or then existing in favor of Purchaser, and anyone claiming under him, shall cease and the right of possession and all equitable and legal interest in the premises hereby contracted with all the improvements and appurtenances, shall revert to and revest in Department, and without any right to Purchaser, or anyone claiming under him, either at law or in equity, or reclamation or recovery or of compensation for moneys paid or services performed or improvements placed upon said land.

17. Purchaser agrees to the cancellation of this Contract, and the repossession of the property herein described, in the manner provided by the Contract and the Military and Veterans Code and waives any remedies at law or in equity except as given herein and in said Code. If legal action is required to quiet or clear Department's title to the property, or to obtain possession thereof, after such cancellation, Purchaser shall pay such reasonable attorney fees, legal fees and charges, and court costs as Department may incur and assess in connection therewith.

18. Neither this Contract, nor the real property described herein, nor Purchaser's interest hereunder, shall be transferred, assigned, encumbered, leased, let or sublet, in whole or in part, voluntarily or involuntarily, by operation of law or otherwise, without the prior written consent of Department until Purchaser has paid therefore in full and has complied with all the terms and conditions hereof. It is expressly understood and agreed that this restriction against transfer, assignment, encumbrance, or leasing shall include, but shall not be limited to, bankruptcy or arrangement proceedings, wage earner's plan, proceedings for dissolution of marriage or legal separation, condemnation proceedings, foreclosure proceedings of any kind, and other administrative or judicial proceedings, including tax and execution sales. Purchaser shall not, without written consent of Department, enter into an option or sales agreement affecting the property described herein with a party other than Department, nor shall Purchaser hypothecate this Contract or his interest in the property.

19. <u>Acceleration Clause</u>. If the property described herein or Purchaser's interest therein is so transferred, assigned, encumbered, leased, let or sublet, optioned or sold, pledged or hypothecated, without prior written consent of Department, such transfer, assignment, encumbrance, lease, rental, option or sale, or pledge or hypothecation, shall be void and of no force or effect whatsoever and the total unpaid balance under this Contract shall be immediately due and payable upon demand of the Department. Each and all of the covenants, terms and conditions herein contained shall be equally binding upon heirs, devisees, administrators, executors, assigns and successors in interest of each of the parties hereto. This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to section 3714 of chapter 37, title 38, United States Code.

20. <u>Funding Fee Clause (Assumption)</u>. A fee equal to one-half of 1 percent of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder (the Department of Veterans Affairs of the State of California) or its authorized agent, as trustee for the United States Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729(c).

21. <u>Indemnity Liability Assumption Clause</u>. If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

22. <u>Processing Charge Clause (Assumption)</u>: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the United States Department of Veterans Affairs for a loan to which section 3714 of chapter 37, title 38, United States Code applies.

23. The Department will not give its consent to any such transfers, assignments, encumbrances, leasing, lettings, subletting, options, sales, pledges, or hypothecations which do not meet all requirements imposed by State law and by the Federal Mortgage Subsidy Bond Tax Act of 1980, any and all rules or regulations pursuant thereto, and any and all acts or rules amendatory thereof.

24. Purchaser further agrees and understands that, in addition to the conditions set forth herein under which Department may accelerate and terminate this Contract, Department shall also have the right to accelerate and terminate this Contract and all rights of Purchaser and anyone claiming under him, in the same manner and to the same extent prescribed herein, if Purchaser, or anyone acting on his own or on Purchaser's behalf, makes or has made false statements, or omits or has omitted any information, with respect to his application or any information requested or solicited by Department, including, but not limited to, any statements on or information solicited by any Purchaser's or Seller's Affidavit and Certification which may be executed and delivered in connection with this Contract or policy of insurance issued pursuant to this contract.

25. Upon payment in full of the unpaid balance hereunder, and upon the performance by Purchaser of his covenants herein contained, Department shall execute and deliver to Purchaser a good and valid deed of conveyance of the property hereinabove described.

26. <u>**Entire Agreement:**</u> This Cal-Vet loan contract constitutes the entire agreement and the final expression of such agreement with respect to the terms which are included in the Contract; and it is agreed that this Contract is the exclusive statement of the terms of such agreement. Purchaser has relied upon his or her own investigation and evaluation with regard to the condition, suitability, values and desirability of the subject real property; and Purchaser has not relied upon any information from the Department with regard to such matters. Purchaser has not relied upon any representations regarding the terms and conditions of this agreement other than as set forth herein and as incorporated herein by reference. Any subsequent modification of the terms of this writing must be evidenced by a writing signed by the parties. This contract supercedes any prior or contemporaneous agreements, representations or understandings regarding the terms and conditions of this contract. By signing this Agreement Purchaser acknowledges he/she has read, understands and is bound by the terms and conditions of this contract.

DEPARTMENT OF VETERAN AFFAIRS
OF THE STATE OF CALIFORNIA

Purchaser _Charles Denis Downie_
VETERAN PURCHASER'S SIGNATURE

## ASSIGNMENT

We, _Charles Denis Downie_ and _Lydia Downie_, Husband and Wife, hereby assign and grant unto ourselves all of our rights and privileges under the above contract and the real property therein described and assume all of the obligations incident thereto, to be hereafter owned and held by us as joint tenants.

Date _2-27-2004_

Husband _Charles Denis Downie_
Wife _[signature]_

STATE OF CALIFORNIA
County of _Lake_ } ss.:

On this _27th_ day of _Feb 2004_, before me, _Elaine Taber_, a Notary Public, personally appeared _Charles Denis Downie_ and _Lydia Downie_, personally known to me or proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the foregoing assignment, and who acknowledged to me that they executed the same.

Witness my hand and official seal the day and year in this certificate first above written.

_[signature] Taber_
Notary Public in and for said County and State

ELAINE TABER
Commission # 1454600
Notary Public - California
Lake County
My Comm. Expires Dec 8, 2007

THE FOREGOING CONTRACT AND ASSIGNMENT VALIDATED

DEPARTMENT OF VETERANS AFFAIRS
OF THE STATE OF CALIFORNIA

By _[signature]_
Authorized Officer

RECORDING REQUESTED BY

In Reference to and a Part of:
CONTRACT #934328

## CONSTRUCTION ADDENDUM
### (to Cal-Vet Loan Contract)

This Construction Addendum (to Cal-Vet Loan Contract) is related to and a part of the Cal-Vet Loan Contract referenced above by and between the DEPARTMENT OF VETERANS AFFAIRS OF THE STATE OF CALIFORNIA, hereinafter called "department", and __CHARLES DENIS DOWNIE__ Hereinafter called "veteran purchaser".

1. Pursuant to the provisions of Section 987.60 of the California Military and Veterans Code, and any and all acts or rules amendatory thereof or supplemental thereto, department agrees to advance to veteran purchaser and veteran purchaser agrees to accept from department upon the terms and conditions herein set forth, funds for the purpose of purchasing and making permanent improvements to the real property described in said original contract and in the amount set forth in said original contract.

2. During the construction of the improvements, advancement of funds shall be disbursed through progress payments or a voucher payment plan based on inspection for work completed and submission by the veteran purchaser of an invoice or voucher for payment of work actually done, as the department in its discretion may determine.

3. Progress or voucher payments shall not be added to the veteran purchaser's account until actually made or disbursed. The monthly payments shall be based on the balance in veteran purchaser's account and shall consist of interest, property taxes and applicable insurance premiums until such time as the final progress payment has been disbursed. At that time, the monthly installment will be amortized to repay the loan under the terms of the original contract. The monthly installment may vary from time to time depending on any adjustment in interest rate, taxes and insurance.

4. No progress or voucher payments will be made until the veteran purchaser has provided the department with satisfactory evidence of payment of all prior costs of construction or services, together with such stop notice and mechanic's lien releases as the department may require. Joint checks or warrants payable to any combination of the veteran purchaser, the contractor, or the subcontractor or material man may also be used, in the discretion of the department, including a requirement for stop notice and mechanics' lien release. The department in its discretion may withhold up to ten percent (10%) of this advance until at least thirty-five (35) days after a valid notice of completion has been recorded.

5. Pursuant to the provisions of 987.60 of the California Military and Veterans Code and the Federal Mortgage Subsidy Bond Tax Act of 1980, this advance may be used only for the purpose of making permanent improvements as approved by the department. Said improvements shall be in accordance with plans, specifications, contracts or proposals submitted to and approved by the department prior to commencement of such improvements, and shall conform to any and all applicable building codes and ordinances as evidenced by inspection by appropriate building authorities. The department will also require such contractor's performance and payment bonds as it deems necessary or appropriate.

6. This contract is related to and is a part of the original contract, and all the terms and conditions of the original contract, and all of the terms and conditions of the original contract are incorporated herein by this reference the same as if each and every term and condition thereof were fully set forth herein. However, in the event of any conflict between the original contract and this contract, the terms and conditions of this contract shall prevail as to any matter covered herein.

DEPARTMENT OF VETERANS AFFAIRS
OF THE STATE OF CALIFORNIA

By: _____
(Authorized Officer)

VETERAN PURCHASER

_____
(Signature)     CHARLES DENIS DOWNIE

Case: 10-11995   Doc# 29   Filed: 10/04/10   Entered: 10/07/10 11:21:26   Page 11 of 17

# EXHIBIT 2

CONTRACT (HIL) # __970512__
Related to and Part of:
CONTRACT (Basic)# __934328__

CHARLES D. DOWNIE
10133 FAIRWAY DRIVE
KELSEYVILLE, CA 95451

CalVet LOAN CONTRACT
(Improvement Advance)

THIS CONTRACT is made and entered into this __15th__ day of __October, 2007__ by and between the DEPARTMENT OF VETERANS AFFAIRS OF THE STATE OF CALIFORNIA, hereinafter called "Department", and __CHARLES D. DOWNIE__ and __LYDIA DOWNIE__, hereinafter called "Purchasers."

1. Pursuant to the provisions of Section 988.2 of the California Military and Veterans Code, and any and all acts or rules amendatory thereof or supplemental thereto, Department agrees to advance to Purchaser and Purchaser agrees to accept from Department, upon the terms and conditions herein set forth, the sum of __SEVENTY FIVE THOUSAND AND 00/100 DOLLARS__ Dollars ($ __75,000.00__) for the purpose of making permanent improvements or repairs to the real property being purchased from the Department under Cal-Vet Loan Contract No. __934328__ hereinafter referred to as "the original contract."

2. Said advance shall bear interest at the amortized rate of __6.55__% and with a permanent contract rate not to exceed __6.55__% per annum, or rates prescribed pursuant to Sections 987.87 and 987.875 of the Military and Veterans Code, and shall be repaid by Purchaser to Department in monthly installments over a period not to exceed __180__ months ( __15__ ) years.

3. The monthly installment necessary to repay this advance within the term fixed is
__SIX HUNDRED FIFTY FIVE AND 39/100 DOLLARS__ ($ __655.39__ ). Purchaser shall pay this installment each and every month commencing on the first day of the next month following thirty (30) days from the date loan funds are fully disbursed and shall continue on the first day of each and every month thereafter. Until such time as the loan funds are fully disbursed Purchaser shall on the first of each month pay the calculated daily interest on the amount of funds disbursed. A late charge of Four Percent (4%) of the principal and interest portion of the monthly installment due shall be assessed for each and every payment due, under the original contract or under this contract, which is received after the sixteenth (16th) day of any month. The actual amount of such charge shall be as determined by the Department from time to time on the basis of its costs and revenue losses in handling and processing late payments.

4. Payments of loan funds may be made by progress payments based on verification of work completed and submission by the Purchaser of an invoice for payment, or reimbursement for payment for work actually completed, as the Department in its discretion may determine. In either case, Purchaser shall begin paying the full monthly installment as and when required by Paragraph 3, above, but progress payments shall not be added to the Purchaser's account until actually made or disbursed. Until all disbursements are completed, interest only will be charged and billed unless the original contract is paid in full. Under such circumstances, interest and impound charges will be billed until the time that the loan amount has been fully disbursed.

5. No progress payments will be made until the Purchaser has provided the Department with satisfactory evidence of payment of all prior costs of construction or services, together with such stop notice and mechanics' lien releases as the Department may require. Joint checks or warrants payable to any combination of the Purchaser, the contractor, or the subcontractor or material man may also be used, in the discretion of the Department, including a requirement for stop notice and mechanics' lien release. The Department in its discretion may withhold up to fifty percent (50%) of this advance until at least thirty-five (35) days after a valid notice of completion has been recorded.

6. If the Purchaser has previously obtained secondary financing and there are existing encumbrances against the property, the Purchaser may be required, in the Department's discretion, to obtain and submit a satisfactory subordination agreement from the holder or holders of any or all prior secured interest or interests, as a condition precedent to the making of this advance. In no case shall the combined amounts of the original contract balance, all other encumbrances, and this advance exceed ninety percent (90%) of the Department's estimate of the enhanced market value of the property.

DFH L-25A (8/2005)
ES-3467

Page 1 of 2

Case: 10-11995   Doc# 29   Filed: 10/04/10   Entered: 10/07/10 11:21:26   Page 13 of 17

7. Pursuant to the provisions of Section 988.2 of the California Military and Veterans Code and the Federal Mortgage Subsidy Bond Tax Act of 1980, this advance may be used only for the purpose of making permanent improvements or repairs, as approved by the Department. Said improvements or repairs shall be in accordance with plans, specifications, contracts, or proposals submitted to and approved by the Department prior to commencement of such improvement or repair, and shall conform to any and all applicable building codes and ordinances as evidenced by inspection by appropriate building authorities. The Department may also require such contractor's performance or payment bonds, as it deems necessary or appropriate.

8. The Purchaser shall apply for and maintain such additional fire and casualty insurance and accident, health, life and disability insurance as the Department may require in connection with this advance.

9. Purchaser agrees that upon payment in full of the original CalVet Loan Contract all insurance policies in effect on that contract shall be transferred to the Home Improvement Advance contract, and that the balances maintained in the escrow accounts to pay insurance premiums and property taxes, and the monthly installments necessary to maintain those accounts, shall be transferred to the Home Improvement Advance Contract

10. The Purchaser agrees and understands that subsequent improvement advances are subject to regulation and Department policy at time of application.

11. This contract is related to and is a part of the original contract, and all the terms and conditions of the original contract are incorporated herein by this reference the same as if each and every term and condition thereof were fully set forth herein. However, in the event of any conflict between the original contract and this contract, the terms and conditions of this contract shall prevail as to any matter covered herein.

PURCHASER(S) _Charles Denis Downie_     _[signature]_
                Veteran                                  Spouse

STATE OF CALIFORNIA        )
County of _Lake_              )

On this _19_ day of _Oct._, 20_07_, before me _Sandra D. Goss_, Notary Public, personally appeared _Charles Denis Downie_ and _Lydia Downie_

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal _[signature]_
                                          (Seal)

[Notary stamp: SANDRA D. GOSS, Commission # 1712632, Notary Public - California, Lake County, My Comm. Expires Dec 24, 2010]

THE FOREGOING CONTRACT AND ASSIGNMENT VALIDATED

DEPARTMENT OF VETERANS AFFAIRS
OF THE STATE OF CALIFORNIA

By _____
       *Authorized Officer*

# EXHIBIT 3

# Lake COUNTY 2010 - 2011 PROPERTY TAX BILL
## Sandra M. Shaul, Treasurer/Tax Collector
### 255 N. Forbes Street, Room 215 Lakeport, CA 95453 (707) 263-2234
### SECURED TAX ROLL FOR FISCAL YEAR JULY 1, 2010 - JUNE 30, 2011

10/1/2010 3:56:24PM

### PROPERTY INFORMATION | IMPORTANT MESSAGES

| | |
|---|---|
| **ASMT NUMBER:** 043-573-220-000  **TAX RATE AREA:** 056-035 | Original bill date 09/10/2010 |
| **FEE NUMBER:** 043-573-220-000  **ACRES:** | SUPPLEMENTALS ARE NOT SENT TO LENDERS! |
| **LOCATION:** 10133 FAIRWAY DR | EMAIL REMINDER Enroll at http://tax.co.lake.ca.us |
| **ASSESSED OWNER:** DOWNIE CHARLES DENIS DVA | EPAY at http://tax.co.lake.ca.us or (866)506-8035 |
| | Cortac Number: 6000 |
| | Please see reverse side for additional information |

DOWNIE CHARLES DENIS DVA  
C/O DEPT OF VETERANS AFFAIRS  
1227 O STREET ROOM 403  
SACRAMENTO CA 95814-5840

**2010 - 2011**

**DUPLICATE COPY**

### COUNTY VALUES, EXEMPTIONS AND TAXES

**PHONE #'S**
- VALUATIONS (707) 263-2302
- EXEMPTIONS (707) 263-2302
- ADDRESS CHGS (707) 263-2302
- PERSONAL PROP (707) 263-2302
- TAX RATES (707) 263-2311
- PAYMENT INFO (707) 263-2234

| VALUE DESCRIPTION | PRIOR | CURRENT | THIS BILL |
|---|---|---|---|
| LAND | | 55,073 | 55,073 |
| STRUCTURAL IMPROVEMENTS | | 176,792 | 176,792 |
| NET TAXABLE VALUE | | | 231,865 |

VALUES X TAX RATE PER $100  1.000000   2,318.66

### VOTER APPROVED TAXES, TAXING AGENCY DIRECT CHARGES AND SPECIAL ASSESSMENTS

| PHONE # | CODE | DESCRIPTION | ASSESSED VALUES | X | TAX RATE PER $100 | × | AGENCY TAXES |
|---|---|---|---|---|---|---|---|
| (707) 279-1511 | 02100 | KLSY USD MULTI-USE BOND 02 | 231,865 | | .015480 | | 35.84 |
| (707) 468-3007 | 06200 | MENDOCINO COMM COLLEGE BOND | 231,865 | | .023000 | | 53.32 |

| PHONE # | DESCRIPTION | DIR CHRG | PHONE # | DESCRIPTION | DIR CHRG | PHONE # | DESCRIPTION | DIR CHRG |
|---|---|---|---|---|---|---|---|---|
| (800) 273-5167 | LAKE CO VCD & MOS | 5.44 | (707) 279-4288 | FIRE KELSEYVILLE | 19.00 | | | |

| | |
|---|---|
| AGENCY TAXES | 89.16 |
| DIRECT CHARGES | 24.44 |
| AGENCY TAXES + DIRECT CHARGES + FEES + PENALTY + COST + DELINQUENT PENALTIES | 113.60 |

| 1ST INSTALLMENT $1,216.13 DELINQUENT AFTER 12/10/2010 | 2ND INSTALLMENT $1,216.13 DELINQUENT AFTER 4/10/2011 | **TOTAL TAXES $2,432.26** |
|---|---|---|

---

### Lake COUNTY SECURED PROPERTY TAXES - 2ND INSTALLMENT PAYMENT STUB

| | | |
|---|---|---|
| **ASMT NUMBER:** | 043-573-220-000   2010 | **MAKE CHECK PAYABLE TO:** |
| **ORIG ASMT:** | 043-573-220-000 | Lake County Tax Collector |
| **FEE NUMBER:** | 043-573-220-000 | 255 N. Forbes Street, Room 215 |
| **LOCATION:** | 10133 FAIRWAY DR | Lakeport, CA 95453 |
| **CURRENT OWNER:** | DOWNIE CHARLES DENIS DVA | |
| | C/O DEPT OF VETERANS AFFAIRS | |
| | 1227 O STREET ROOM 403 | |
| | SACRAMENTO CA 95814-5840 | |

**2010-2011 2ND**

| IF PAID BY 4/10/2011 | $1,216.13 |
|---|---|

DELINQUENT AFTER 4/10/2011 (INCLUDES 10% PENALTY OF $121.61 AND $20.00 COST)   $1,357.74

0435732200009201070000012161342000001357748201074

---

### Lake COUNTY SECURED PROPERTY TAXES - 1ST INSTALLMENT PAYMENT STUB

| | | |
|---|---|---|
| **ASMT NUMBER:** | 043-573-220-000   2010 | **MAKE CHECK PAYABLE TO:** |
| **ORIG ASMT:** | 043-573-220-000 | Lake County Tax Collector |
| **FEE NUMBER:** | 043-573-220-000 | 255 N. Forbes Street, Room 215 |
| **LOCATION:** | 10133 FAIRWAY DR | Lakeport, CA 95453 |
| **CURRENT OWNER:** | DOWNIE CHARLES DENIS DVA | |
| | C/O DEPT OF VETERANS AFFAIRS | |
| | 1227 O STREET ROOM 403 | |
| | SACRAMENTO CA 95814-5840 | |

**2010-2011 1ST**

| IF PAID BY 12/10/2010 | $1,216.13 |
|---|---|

DELINQUENT AFTER 12/10/2010 (INCLUDES 10% PENALTY OF $121.61)   $1,337.74  
TO PAY TOTAL TAXES, RETURN BOTH STUBS BY 12/10/2010   $2,432.26

0435732200009201070000012161341000001337740201074

# PROOF OF SERVICE

I am at least 18 years of age, not a party to this action, and I am employed in the county where the mailing took place. My business address is California Department of Veterans Affairs, 1227 "O" Street, Sacramento, CA 95814.

On October 4, 2010, I served ☐ the original ☒ a true copy of **OPPOSITION OF CALIFORNIA DEPARTMENT OF VETERANS AFFAIRS TO MOTION FOR ORDER DETERMINING VALUE OF SECURED CLAIM AND FOR ORDER AVOIDING LIEN; DECLARATION OF BILL NOLAN IN SUPPORT THEREOF** enclosed in sealed envelope(s), addressed as follows:

**ATTORNEY FOR DEBTORS**
Daniel B. Beck
Beck Law, P.C.
2681 Cleveland Avenue
Santa Rosa, CA 95403

**DEBTORS**
Charles Denis Downie
Lydia Downie
10133 Fairway Drive
Kelseyville, CA 95451

**ATTORNEY FOR SECURED CREDITOR**
Reilly Wilkinson
Scheer Law Group, LLP
155 N. Redwood Drive, Suite 100
San Rafael, CA 94903

**CHAPTER 13 TRUSTEE**
David Burchard
393 Vintage Park Drive, Suite 150
Foster City, CA 94404

**UNITED STATES TRUSTEE**
Office of the U.S. Trustee/SR
235 Pine Street, Suite 700
San Francisco, CA 94104

and by the following method:

☒ US MAIL -- ☐ by depositing with the United States Postal Service with the postage fully prepaid ☒ by placing for collection and mailing on the date and place described above following our ordinary business practices. I am "readily familiar" with the department's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid.

☐ OVERNIGHT DELIVERY: I caused such envelope(s) to be delivered to the above addressee(s) by placing said envelope(s) with fees paid in a collection box regularly maintained by the express service carrier at Sacramento, California.

☐ VIA FACSIMILE: I caused such documents to be transmitted from our telecopier ((916) 653-2454) to the above addressee(s) at the following fax number(s): fax number(s) The transmission was reported as complete and without error as evidenced by the attached transmission report showing the date and time of transmission.

I declare under penalty of perjury under the laws ☒ of the State of California ☐ of the United States of America that the above is true and correct this 4th day of October, 2010, at Sacramento, California.

CATHERINE BANKS
(Type or Print Name)

_(Signature)_

- 1 -